**Brooke Estate**

*Smith, Aker, Grossman & Hollinger,* and *Drinker, Biddle & Reath,* for accountants.

*Harry T. Rosenheim, Jr.* and *Samuel Lander,* for widow.

*Obermayer, Rebmann, Maxwell & Hippel,* for beneficiary.

TAXIS, P. J., October 2, 1968.—One question requires discussion: namely, a request of Hahnemann Medical College and Hospital to deviate from the will provisions in the following circumstances:

On January 28, 1967, decedent, John A. Brooke died at the age of 92 a resident of Merion, Montgomery County, Pa., leaving a will dated June 13, 1966, and codicils thereto dated July 27, 1966, and January 27, 1967. Decedent's estate has an inventory value of approximately $235,000.

By the terms of paragraph fourth of his will dated June 13, 1966, decedent gave his residuary estate to Hahnemann Medical College and Hospital for the purpose of establishing a fund to be known as "The John A. Brooke Fund" to be used to establish a chair of orthopedic surgery. The Hahnemann Medical College and Hospital is a nonprofit corporation existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 230 North

Broad Street, Philadelphia, Pa. At the time of the execution of this said will, decedent was a widower.

On January 14, 1967, decedent married Esther C. Brooke, a widow, age 78 years. On January 27, 1967, within two weeks after the said marriage, decedent executed a codicil which provided that his wife, Esther C. Brooke, would receive income from his residuary estate for life and such amounts of principal as the trustees deem necessary for her "maintenance, health and reasonable comfort". Thus by virtue of the codicil the principal gift to Hahnemann was to be delayed until the death of decedent's wife. Decedent died the day after he executed this codicil.

Subsequent to decedent's death, on April 28, 1967, Esther C. Brooke filed an election to take against decedent's will and codicil which election would have resulted in her receiving one-half of decedent's estate. Although the gift to Hahnemann would have been accelerated by the election, the gift would be far less in size than that which would have been received by the widow.

The widow and Hahnemann have entered into a settlement agreement which, if approved by this court, will result in a net principal estate distributable to Hahnemann, of approximately $88,000. Under the terms of paragraph fourth (2) of the will, as modified by the decedent's codicil dated January 27, 1967, the principal is to be given to Hahnemann Medical College and Hospital to be used toward the establishment and maintenance of a chair of orthopedic surgery to support the teaching of this branch of medicine in that college to be known as "The John A. Brooke Fund".

As a sum well in excess of $500,000 would be required to endow a chair of orthopedic surgery, it is clear that the distributable sum of $88,000 is insufficient to effect Dr. Brooke's purpose. There is presently no trust or fund in existence for this purpose at

Hahnemann to which the gift could be added to implement the decedent's desire. For this reason, Hahnemann desires that the gift be added to its "21st Century Building Fund" or to the General Endowment Fund of the College to be used in the construction of a new hospital building including an orthopedic wing or in the construction of facilities devoted to orthopedic field of medicine. If the gift can be so used Hahnemann would place a suitable memorial to Dr. Brooke in an appropriate location in the orthopedic offices and Research Area when completed. Charles S. Paxson, Jr., vice president and administrator of Hahnemann, appeared at audit and gave helpful testimony establishing the impossibility of Dr. Brooke's gift as intended and outlining the feasibility of the suggested alternative.

The question now is whether the requested deviation can be permitted.

When a testator's estate is of insufficient size to permit the realization of his charitable intentions in the exact manner specified in his will, the courts endeavor to fulfill decedent's charitable purposes by awarding the funds *cy pres* to an existing charity the goals and aims of which are similar to those testator had in mind: Cf. Wanamaker Estate, 364 Pa. 248; Williams Estate, 353 Pa. 638.

In Wanamaker and Williams, gifts were diverted from the institutions specifically named and were made available for the benefit of other organizations already in existence and well established. The court may deviate, however, from a testator's desires by awarding the fund to the same institution with the intention that the gift, although not used for the exact purposes specified in the will, would be devoted to a purpose which makes the use of the gift more practical and more likely to achieve ultimately those goals and aims which the decedent had in mind at the time

of the execution of the will: Cf. Spoerl Estate, 5 D. & C. 2d 130; Barron Estate, O. C. Phila., 3403 of 1967.

Where a gift is made to a certain institution for a specified purpose, the award should be made to that institution so long as the institution has a means of utilizing the gift in a manner most closely approximating that designated by the donor.

As it is presently impossible to make use of Dr. Brooke's gift to further the medical field of orthopedic surgery by endowing a chair of orthopedic surgery, the court concludes that the use of Dr. Brooke's gift in the construction of all or a portion of a wing or of other facilities devoted to orthopedic medicine would be an ideal alternative means of implementing Dr. Brooke's expressed desire to improve and expand the field of orthopedic medicine. Such use would not only be in accordance with fulfilling a testator's charitable design in a similar manner when the designated means are impossible of fulfillment, but such award would also in the instant case have the specific result of achieving the very goal Dr. Brooke had in mind, to wit, the expansion and enhancement of the medical field of orthopedic medicine.

Hahnemann Medical College and Hospital is therefore awarded Dr. Brooke's gift for use in the construction of orthopedic facilities or an orthopedic wing either by adding the fund to the hospital's "21st Century Building Fund" or to the "General Endowment Fund of the College" with the understanding that a suitable memorial to Dr. Brooke be placed in or near the newly constructed facilities devoted to orthopedic offices and research areas . . .

And now, October 2, 1968, this adjudication is confirmed nisi.